**Deborah S. BROTHERTON, et al., Plaintiffs,**

v.

**Frank P. CLEVELAND, M.D., et al., Defendants.**

No. C-1-89-0105.

United States District Court, S.D. Ohio, W.D.

Aug. 11, 1989.

John H. Metz, Cincinnati, Ohio, for plaintiffs.

Philip L. Zorn, Jr., Asst. Pros. Atty. of Hamilton County, Stephen A. Bailey, Harry J. Finke, IV, Holly S. Doan, Bruce B. McIntosh, Cincinnati, Ohio, for defendants.

SPIEGEL, District Judge.

Before the Court are motions to dismiss filed by defendants Ohio Valley Organ Procurement Center (doc. 8), Cincinnati Eye Bank for Sight Restoration (doc. 12) and Eye Bank Association of America (doc. 17). Plaintiffs have filed memoranda in opposition to the motions (docs. 10, 15, 18). Despite our sympathy for the plaintiffs and our concern at the Coroner's arbitrary and insensitive actions, we reluctantly conclude that plaintiffs' federal claims must be dismissed. Further, although plaintiffs have stated viable state claims for emotional distress, the doctrine of pendent jurisdiction will not permit this court to entertain those claims alone. Thus, the entire action must be dismissed.

### FACTS

Plaintiffs are the wife and children of decedent Steven Brotherton and purportedly a class of others similarly situated. This action was brought as a result of the following sequence of events, as alleged by plaintiffs in their complaint. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515–516, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972).

On February 15, 1989, Steven Brotherton was found "pulseless" in an automobile and taken by emergency vehicle to defendant Bethesda Hospital (North). He was pronounced dead by the Bethesda North staff. Thereafter, the hospital asked plaintiff Deborah Brotherton, decedent's wife, to consider an anatomical gift. She refused, based on her husband's strong feelings against such a gift, and her refusal was documented in the Hospital's "Report of Death" record concerning decedent.

Bethesda North subsequently released the body to the Hamilton County Coroner, defendant Frank Cleveland, M.D., as the case was being considered a possible suicide. An autopsy was performed on February 16, 1988. Unbeknownst to plaintiff Deborah Brotherton, the Coroner's Office permitted decedent's corneas to be removed and utilized as anatomical gifts. The actual removal was performed by a technician from defendant Cincinnati Eye Bank after Cincinnati Eye Bank was advised by the Coroner's Office that the corneas were available.

Plaintiffs only discovered that decedent's corneas were missing when they read the autopsy report. They were shocked by the news.

Prior to the removal of decedent's corneas, Bethesda North made no effort to inform the Coroner's Office of Deborah Brotherton's objection to the removal, and the Coroner's Office made no effort to determine whether there was any such objection. It is the custom and policy of the Coroner's Office not to review medical records or paperwork pertaining to a corpse prior to performing an autopsy or permitting the removal of corneas.

Plaintiffs filed the instant suit under 42 U.S.C. § 1983, alleging that defendants' conduct constituted a "taking" in violation of due process and equal protection. Defendants contend that as plaintiffs have no constitutionally protected property right in decedent's corpse, they have failed to state a claim upon which relief may be granted.

### ANALYSIS

Title 42 U.S.C. § 1983 provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To recover under section 1983, a plaintiff must prove 1) that he or she was deprived of a right secured by the Federal Constitution or laws of the United States, and 2) that the deprivation was caused under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Ana Leon T. v. Federal Reserve Bank,* 823 F.2d 928, 931 (6th Cir. 1987) *(per curiam ), cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

Plaintiffs allege that defendants' conduct deprived them of their rights under the Fourteenth Amendment, which prevents states from depriving any person of property without due process of law and equal protection of the law. The due process claim depends upon plaintiffs having had a property right in their decedent's corpse. *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). If they did, the state (or those acting under color of state law) could not deprive them of the property without due process of law. *Id., citing Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978); *Goss v. Lopez,* 419 U.S. 565, 573–574, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1975).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, the first issue here is whether Ohio law creates such an interest. If it does, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Craft,* 436 U.S. at 9, 98 S.Ct. at 1560.

Ohio common law rejects the contention that a surviving custodian has a property right in the body of a decedent. In *Carney v. Knollwood Cemetery Assn.,* 33 Ohio App.3d 31, 514 N.E.2d 430 (1986), the Cuyahoga County Court of Appeals considered the question when deciding who has standing to assert a claim for the mishandling of a dead body. The *Carney* court noted the historical practice of premising recovery for abuse of a corpse on some fictitious "quasi-property" interest in the cadaver, and observed that damages awarded under this concept were generally limited to the persons who had the legal right to the disposition of the body. *Id.* at 35, 514 N.E.2d 430. After reviewing legal treatises and the laws of various jurisdictions, the court concluded that "this court rejects the theory that a surviving custodian has quasi-property rights in the body of the deceased, and acknowledges the cause of action for mishandling of a dead body as a subspecies of the tort of infliction of serious emotional distress." *Id.* at 37, 514 N.E.2d 430. However, the court permitted all of the plaintiffs to pursue their claims for outrageous disturbance of the decedent's remains.

The only other case on point, *Everman v. Davis,* No. 11125, 1989 WL 2162 (Ohio App. Jan. 13, 1989) (LEXIS, States library, Ohio file), is in accord. In *Everman,* plaintiff brought suit after the coroner performed an autopsy on plaintiff's decedent without plaintiff's permission. Plaintiff alleged *inter alia,* that a husband's right to possession of his deceased wife's body for purposes of preparation, mourning, and burial is protected against an unreasonable search or seizure by the Fourth and Fourteenth Amendments. Concluding that a dead body is not an "effect" within the meaning of the "persons, houses, papers, and effects" clause of the Fourth Amendment because it is neither real nor personal property, the Montgomery County Court of Appeals noted that

[t]here is no issue in this case of the possessory right of a spouse or other appropriate member of the family of a

deceased body for the purpose of preparation, mourning and burial. This right is recognized by law and by the decisions. R.C. 313.14. This is not to say that a person has a property right in the body of another, living or dead, or that a corpse may not be temporarily held for investigation as to the true cause of death. *Everman*, LEXIS at 5–6.

The Court therefore affirmed the trial court's Rule 12(b)(6) dismissal of the action.

Despite Ohio's common law position on this issue, plaintiffs argue that Ohio statutory law implicitly recognizes a next-of-kin's property right in a decedent's body. Specifically, they cite Ohio Rev.Code Ann. § 2108.02(B) (Anderson 1976), which states:

Any of the following persons, in the order of priority stated, when persons in prior classes are not available at the time of death, and in the absence of actual notice of contrary indications by the decedent or actual notice of opposition by a member of the same or a prior class, may give any part of the decedent's body for any purpose specified in section 2108.03 of the Revised Code:

1) The spouse;

2) An adult son or daughter;

3) Either parent;

4) An adult brother or sister;

5) A guardian of the person of the decedent at the time of his death;

6) Any other person authorized or under obligation to dispose of the body.

Plaintiff contends that one must possess a property right in an item in order to give that item away.

▪ Plaintiffs' argument is not persuasive. Section 2108.02(B) grants certain persons a limited right to donate a decedent's body parts to specific persons or organizations for medical, educational, or therapeutic reasons. *See* Ohio Rev.Code Ann. § 2108.03 (Anderson 1976). The statute does not create unlimited rights in the corpse. *C.f.*, Restatement (Second) of Torts § 868 (1979) (stating that the right of control of a dead body does not fit well into the category of property, because the body ordinarily cannot be sold or transferred, has no utility and can be used only for the

one purpose of interment or cremation); Ohio Rev.Code Ann. § 2108.11 (Anderson 1976) (holding that a transaction involving human tissue is not a sale).

Ohio courts regard a relative's right in a dead body as possessory in nature; this Court considers it more analogous to a next-of-kin's right to consent to medical treatment on behalf of a minor or an incapacitated person. *See* Ohio Rev.Code Ann. § 2317.54(C) (Anderson 1988) (medical consent statute). Nothing in Ohio's statutory scheme warrants a finding that the relative's rights in a corpse are more extensive than mere possession or consent. Accordingly, plaintiffs did not have a property interest in their decedent's body and thus have no recourse under the due process clause.

▪ Plaintiffs also allege that they were denied equal protection of the laws "since the Coroner determines whether an autopsy is performed and only those bodies upon which an autopsy is performed ... are subject to the un-noticed, unauthorized taking of the decedent's corneas...." (Complaint, doc. 1, ¶ 15). Apparently, plaintiffs are contending that Ohio Rev. Code Ann. § 2108.60(B), which permits a county coroner who performs an autopsy to remove the corneas of the decedent under certain circumstances, creates some unconstitutional classification. Although it is not clear from the complaint, the Court presumes for purposes of this motion that plaintiffs are challenging the initial determination of when an autopsy will be performed, thereby placing a dead body within the group from which the coroner may remove corneas. *See* Ohio Rev.Code Ann. § 313.13.1(B) (Anderson 1987).

A legislative classification challenged under the equal protection clause is subjected to strict judicial scrutiny "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (*per curiam*) (footnotes omitted). The *Murgia*

court listed the following fundamental rights: privacy, voting, interstate travel, procreation, and rights guaranteed by the First Amendment, *Id.* at 312 n. 3, 96 S.Ct. at 2566 n. 3, and the following suspect classes: alienage, race, and ancestry, *Id.* at 312 n. 4, 96 S.Ct. at 2566 n. 4, as entitled to strict scrutiny. Plaintiffs' possession or consent right in decedent's body does not constitute a fundamental right, and, of course, decedent's fundamental rights terminated at his death. *See Tillman v. Detroit Receiving Hospital,* 138 Mich.App. 683, 686–687, 360 N.W.2d 275, 277 (Mich. Ct.App.1984). Similarly, plaintiffs have not alleged a class which is among those that courts have traditionally deemed suspect. Accordingly, equal protection requires only that the classification be rationally related to a legitimate state interest. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Murgia,* 427 U.S. at 314, 96 S.Ct. at 2567.

The state has a legitimate interest in determining the cause of death of its citizens in order to protect the public health and to promote law enforcement. It also has a legitimate interest in implementing an organ/tissue donation program: enhancing the health of its citizenry. The court therefore concludes that the classification at issue does not deny plaintiffs' equal protection of the laws.

## CONCLUSION

This Court is disturbed by the defendants' callous actions in this case. Permitting the disfigurement of a loved one's body, even for the noble purpose of donating organs or tissues to others, is a personal decision that should be left to the decedent during life or the next-of-kin after death. Mutilation of a decedent's remains despite expressed instructions to the contrary is certain to intensify the grief, shock, and horror normally experienced by the family at the time of such loss. An action for the infliction of this severe emotional distress is the proper remedy for actions, such as those of the defendants here, which magnify the anguish felt by a decedent's family.

However, because defendants' actions do not infringe upon plaintiffs' Fourteenth Amendment rights, plaintiff's § 1983 claim does not state a claim upon which relief may be granted. Further, as plaintiffs' challenge to the constitutionality of Ohio Rev.Code Ann. § 2108.60(C) (which defines a coroner's immunity) is premised on their equal protection and due process claims, such challenge also must fail. Finally, plaintiffs' pendent state claims must be dismissed. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (holding that if the federal claims are dismissed before trial, the state claims should be dismissed as well).[1]

Accordingly, defendants' motions to dismiss are granted, and this action is dismissed in its entirety. However, such dismissal is without prejudice to the plaintiffs' refiling their pendent claims in state court.

SO ORDERED.

---

**1.** The complaint alleges jurisdiction solely under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (1983 jurisdiction).