923 F.2d 477
 59 USLW 2457
 Deborah S. BROTHERTON; Deborah S. Brotherton, Individually
and as Administratrix of the Estate of Steven Brotherton;
Deborah S. Brotherton, on behalf of her minor children,
Carrie Brotherton and Melissa Brotherton, Plaintiffs-Appellants,
v.
Frank P. CLEVELAND, M.D.; Board of County Commissioners of
Hamilton County, Ohio; Joseph M. DeCourcy; Norman A.
Murdock; Robert A. Taft, II; Eye Bank Association of
America; Cincinnati Eye Bank for Sight Restoration, Inc.;
Ohio Valley Organ Procurement Center; Bethesda North
Hospital; Bethesda, Inc., Defendants-Appellees.
 No. 89-3820.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 30, 1990.
Decided Jan. 18, 1991.
Rehearing and Rehearing En Banc
Denied April 3, 1991.
 
 John H. Metz (argued), Cincinnati, Ohio, for plaintiffs-appellants.
 Philip L. Zorn, Jr. (argued), Stephen A. Bailey, Lindhorst & Dreidame, Harry J. Finke IV (argued), Graydon, Head & Ritchey, Holly S. Doan (argued), John J. Cruze, Porter, Wright, Morris & Arthur, Bruce B. McIntosh (argued), McIntosh, McIntosh & Knabe, Cincinnati, Ohio, for defendants-appellees.
 Before MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Deborah S. Brotherton, the wife of decedent Steven Brotherton, appeals the dismissal of her section 1983 claim for wrongful removal of her deceased husband's corneas. Because we find that Deborah Brotherton has a protected property interest in her husband's corneas and that the removal of those corneas was caused by established state procedures, we reverse.
 
 
 2
 On February 15, 1988, Steven Brotherton was found "pulseless" in an automobile and was taken to Bethesda North Hospital in Cincinnati, Ohio. He was pronounced dead on arrival. The hospital asked Deborah Brotherton to consider making an anatomical gift; she declined, based on her husband's aversion to such a gift, and her refusal was documented in the hospital's "Report of Death."
 
 
 3
 Because Steven Brotherton's death was considered a possible suicide, his body was taken to the Hamilton County coroner's office. An autopsy of Steven Brotherton's body was performed on February 16, 1988; after the autopsy, the coroner permitted Steven Brotherton's corneas to be removed and used as anatomical gifts. The coroner's office had called the Cincinnati Eye Bank, which sent the technician who removed the corneas. Deborah Brotherton did not learn that her husband's corneas had been removed until she read the autopsy report.
 
 
 4
 Bethesda North Hospital made no attempt to inform the coroner's office of Deborah Brotherton's objection to making an anatomical gift, and the coroner's office did not inquire into whether there was an objection. OHIO REV.CODE Sec. 2108.60 permits a coroner to remove the corneas of autopsy subjects without consent, provided that the coroner has no knowledge of an objection by the decedent, the decedent's spouse, or, if there is no spouse, the next of kin, the guardian, or the person authorized to dispose of the body. The custom and policy of the Hamilton County coroner's office is not to obtain a next of kin's consent or to inspect the medical records or hospital documents before removing corneas.
 
 
 5
 Deborah Brotherton, on her own behalf and on behalf of her children, as well as a purported class of similarly situated plaintiffs, filed this case under 42 U.S.C. Sec. 1983, alleging that her husband's corneas were removed without due process of law and in violation of the equal protection clause. She also asserted pendent state law claims for emotional distress.
 
 
 6
 The district court dismissed the complaint, holding that Brotherton failed to state a cognizable claim under section 1983. 733 F.Supp. 56. First, the court determined that Ohio does not give a surviving custodian a property interest in the body of a decedent; thus, Brotherton's due process claim was precluded because she lacked a property interest in her husband's dead body. Second, the district court rejected Brotherton's equal protection claim, which alleged that OHIO REV.CODE Sec. 2108.60 creates an unconstitutional classification because it allows the removal of corneas only from those bodies which have been autopsied by Ohio county coroners. Finding that there was no fundamental right or suspect class at issue, the court determined that the legislative classification need be only rationally related to a legitimate state interest. City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). The district court held that the statute was rationally related to Ohio's legitimate interest in performing autopsies and in implementing an organ donation program. Lastly, the district court dismissed the pendent state claims because it had dismissed the federal claims before trial. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 7
 To state a cognizable claim under 42 U.S.C. Sec. 1983, Brotherton must allege that she was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation occurred under color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir.1987) (en banc). The latter requirement, under color of state law, is easily satisfied in this case: OHIO REV.CODE Sec. 2108.60 permitted the coroner, an employee of Hamilton County, to have a technician remove Steven Brotherton's corneas without regard to anyone's consent; the coroner's office took advantage of this statute by customarily removing corneas before inspecting records or receiving consent. In contrast, the first requirement, deprivation of a right secured by the Constitution or laws of the United States, presents a formidable challenge to Brotherton. She asserts she was deprived of her right to due process of law under the fourteenth amendment, which states, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of law...."
 
 
 8
 There are three prerequisites Brotherton must satisfy to assert a valid due process claim: (1) deprivation, (2) of property, (3) under color of state law. Parratt, 451 U.S. at 536-537, 101 S.Ct. at 1913-14. These three elements are necessary to establish a violation of due process under the fourteenth amendment; however, they alone are insufficient. Id. at 537, 101 S.Ct. at 1914. If Brotherton proves these elements, she must also show either (1) the conduct was caused by "established state procedure rather than random and unauthorized action," Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), or (2) the means of redress for property deprivations provided by the state of Ohio fail to satisfy the requirements of procedural due process. Parratt, 451 U.S. at 537, 101 S.Ct. at 1914; see Wilson v. Beebe, 770 F.2d 578, 583 (6th Cir.1985) (en banc). We noted the under color of state law requirement is easily met in this case; so is the deprivation requirement. Cf. Daniels v. Williams, 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 ("the difference between one end of the spectrum--negligence--and the other--intent--is abundantly clear."). Under the established policy of the coroner's office, Steven Brotherton's corneas were intentionally taken from his body. His wife did not learn of this until she read the autopsy report. The viability of Deborah Brotherton's section 1983 claim, therefore, is dependent upon her having a constitutionally protected property interest in her husband's corneas.
 
 
 9
 Property interests protected by the due process clause must be more than abstract desires or attractions to a benefit. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The due process clause only protects those interests to which one has a "legitimate claim of entitlement." Id. at 577, 92 S.Ct. at 2709. This has been defined to include " 'any significant property interests,' Boddie v. Connecticut, 401 U.S., at 379 [91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) ], including statutory entitlements. See Bell v. Burson, 402 U.S. at 539 [91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ]; Goldberg v. Kelly, 397 U.S. at 262 [90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) ]." Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972).
 
 
 10
 To determine whether Deborah Brotherton's interest in her husband's corneas rises to the level of a "legitimate claim of entitlement" protected by the due process clause, we must examine the laws of the state of Ohio. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). In Roth, the Supreme Court stated that property interests protected by the due process clause "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law...." 408 U.S. at 577, 92 S.Ct. at 2709. State supreme court decisions are the controlling authority for such determinations. Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir.1981). However, the Ohio Supreme Court has not ruled upon the precise issue before this Court; thus, we must look to "other indicia of state law...." Kveragas v. Scottish Inns, Inc., 733 F.2d 409, 412 (6th Cir.1984). This "indicia" includes state appellate court decisions, unless there is persuasive data that the Supreme Court of Ohio would decide otherwise. Clutter, 646 F.2d at 1153.
 
 
 11
 A majority of the courts confronted with the issue of whether a property interest can exist in a dead body have found that a property right of some kind does exist and often refer to it as a "quasi-property right." In re Estate of Moyer, 577 P.2d 108, 110 n. 5 (Utah 1978); see, e.g., Arnaud v. Odom, 870 F.2d 304, 308 (5th Cir.1989), cert. denied sub nom. Tolliver v. Odom, --- U.S. ----, 110 S.Ct. 159, 107 L.Ed.2d 117 (1989) ("Louisiana has indeed established a 'quasi-property' right of survivors in the remains of their deceased relatives."); Fuller v. Marx, 724 F.2d 717, 719 (8th Cir.1984) ("Under Arkansas law, the next of kin does have a quasi-property right in a dead body."). However, two Ohio appellate courts which have been confronted with determining the nature of the right have avoided characterizing it in this manner. See Carney v. Knollwood Cemetery Ass'n, 33 Ohio App.3d 31, 35-37, 514 N.E.2d 430, 434-35 (1986); Everman v. Davis, 54 Ohio App.3d 119, 561 N.E.2d 547, appeal dismissed, 43 Ohio St.3d 702, 539 N.E.2d 163 (1989).
 
 
 12
 In Carney, an appellate court ruled on who has standing to bring a claim for mishandling a dead body. The court stated that calling the right to control the dead body of a relative a "quasi-property right" would create a legal fiction and concluded:
 
 
 13
 This court rejects the theory that a surviving custodian has quasi-property rights in the body of the deceased, and acknowledges the cause of action for mishandling of a dead body as a subspecies of the tort of infliction of emotional distress.
 
 
 14
 Carney, 33 Ohio App.3d at 37, 514 N.E.2d 430. Despite such a categorization, the Carney court did grant some interest in the undisturbed condition of the deceased: "We hold that all four appellees as direct blood descendants ... had standing to press their claim for outrageous disturbance of her remains." Id. at 37, 514 N.E.2d 430.
 
 
 15
 In Everman, an appellate court rejected the argument that a husband's right to possession of his deceased wife's body for purposes of preparation, mourning, and burial is protected against unreasonable search or seizure. In so ruling, the court stated:
 
 
 16
 There is no issue in this case of the possessory right of a spouse or other appropriate member of the family of a deceased for the purposes of preparation, mourning and burial. This right is recognized by law and by the decisions. R.C. 313.14. This is not the say that a person has a property right in the body of another, living or dead, or that a corpse may not be temporarily held for investigation as to the true cause of death.
 
 
 17
 Everman, 54 Ohio App.3d at 122, 561 N.E.2d 547. Evading the question of whether to call the spouse's interest "property," the Everman Court recognized that Ohio does grant that right which resides at the very core of a property interest: the right to possess.
 
 
 18
 The concept of "property" in the law is extremely broad and abstract. The legal definition of "property" most often refers not to a particular physical object, but rather to the legal bundle of rights recognized in that object. Thus, "property" is often conceptualized as a "bundle of rights." See, e.g., Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435, 102 S.Ct. 3164, 3176, 73 L.Ed.2d 868 (1982). The "bundle of rights" which have been associated with property include the rights to possess, to use, to exclude, to profit, and to dispose.
 
 
 19
 The earliest decisions involving property rights in dead bodies were concerned with whether decedents could control the disposition of their remains by will. The English common law held that there was no property right in a dead body, and, therefore, it could not be disposed of by will. See, e.g., Williams v. Williams, 20 Ch.D. 659, 665 (1882). Legal scholars have criticized the English common-law rule, noting that the primary reason for the rule was the historical anomaly that all matters concerning dead bodies were under the jurisdiction of the ecclesiastical courts and, thus, were not subject to common-law analysis. See Note, "She's Got Bette Davis['s] Eyes": Assessing the Nonconsensual Removal of Cadaver Organs Under the Takings and Due Process Clauses, 90 COLUM.L.REV. 528, 550, n. 106 (1990); Note, Toward the Right of Commerciality: Recognizing Property Rights in the Commercial Value of Human Tissue, 34 UCLA L.REV. 207, 226 (1986).
 
 
 20
 Though some early American cases adopted the English common-law rule that there was no property right in a dead body, other cases held that the rule was unsound in light of the rights of next of kin with regard to burial. See, e.g., Renihan v. Wright, 125 Ind. 536, 25 N.E. 822 (1890). The tendency to classify the bundle of rights granted by states as a property interest of some type was a direct function of the increased significance of those underlying rights. The prevailing view of both English and American courts eventually became that next of kin have a "quasi-property" right in the decedent's body for purposes of burial or other lawful disposition. See Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 93, 186 A. 585, 586 (1936) ("it is now the prevailing rule in England as well as in this country, that the right to bury the dead and preserve the remains is a quasi-right in property....").
 
 
 21
 The importance of establishing rights in a dead body has been, and will continue to be, magnified by scientific advancements. The recent explosion of research and information concerning biotechnology has created a market place in which human tissues are routinely sold to and by scientists, physicians and others. Note, Toward the Right of Commerciality, UCLA L.REV. 207, 219 (1986). The human body is a valuable resource. See Moore v. Regents of the University of California, 51 Cal.3d 120, 271 Cal.Rptr. 146, 793 P.2d 479 (1990) (physician used patient's cells in potentially lucrative medical research without his permission). As biotechnology continues to develop, so will the capacity to cultivate the resources in a dead body. A future in which hearts, kidneys, and other valuable organs could be maintained for expanded periods outside a live body is far from inconceivable.
 
 
 22
 Thankfully, we do not need to determine whether the Supreme Court of Ohio would categorize the interest in the dead body granted to the spouse as property, quasi-property or not property. Although the existence of an interest may be a matter of state law, whether that interest rises to the level of a "legitimate claim of entitlement" protected by the due process clause is determined by federal law. Memphis Light, 436 U.S. at 9, 98 S.Ct. at 1560. This determination does not rest on the label attached to a right granted by the state but rather on the substance of that right. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
 
 
 23
 OHIO REV.CODE Sec. 2108.02(B), as part of the Uniform Anatomical Gift Act governing gifts of organs and tissues for research or transplants, expressly grants a right to Deborah Brotherton to control the disposal of Steven Brotherton's body. Everman expresses the recognition that Deborah Brotherton has a possessory right to his body. 54 Ohio App.3d at 121, 561 N.E.2d 547. Carney allows a claim for disturbance of his body. 33 Ohio App.3d at 37, 514 N.E.2d 430. Although extremely regulated, in sum, these rights form a substantial interest in the dead body, regardless of Ohio's classification of that interest. We hold the aggregate of rights granted by the state of Ohio to Deborah Brotherton rises to the level of a "legitimate claim of entitlement" in Steven Brotherton's body, including his corneas, protected by the due process clause of the fourteenth amendment.
 
 
 24
 We also hold the removal of Steven Brotherton's corneas were caused by established state procedures and that Ohio failed to provide the necessary predeprivation process. Hudson, 468 U.S. at 532, 104 S.Ct. at 3203. The Supreme Court has often reiterated that a property interest may not be destroyed without a hearing. See, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). In Logan, the Supreme Court ruled that the timing of a hearing depends upon the accommodation of competing interests involved, which include: the importance of the private interests, the length and finality of deprivation, and the magnitude of governmental interest. Id. at 434, 102 S.Ct. at 1157. The Court added that deprivation of property resulting from an established state procedure can only satisfy due process if there is a predeprivation hearing. Id. at 436, 102 S.Ct. at 1158. This circuit has stated, " 'established state procedure' ... refers to the mechanism that effects a deprivation or contributes to cause a deprivation [and] the relevant inquiry in this context is whether predeprivation process is feasible...." Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 199 (6th Cir.1987) (quoting Rittenhouse v. DeKalb County, 764 F.2d 1451, 1456 n. 5 (11th Cir.1985)). We have called a mechanism for which predeprivation process was necessary but not implemented "an egregious abuse of governmental power." Id. at 199.
 
 
 25
 It is the policy and custom of the Hamilton County coroner's office not to review medical records or paperwork pertaining to a corpse prior to the removal of corneas. This intentional ignorance is induced by OHIO REV.CODE Sec. 2108.60 which allows the office to take corneas from the bodies of deceased without considering the interest of any other parties, as long as they have no knowledge of any objection to such a removal. After the cornea is removed, it is not returned and the corpse is permanently diminished. The only governmental interest enhanced by the removal of the corneas is the interest in implementing the organ/tissue donation program; this interest is not substantial enough to allow the state to consciously disregard those property rights which it has granted. Moreover, predeprivation process undertaken by the state would be a minimal burden to this interest. This Court does not at this time need to establish the type or extent of predeprivation process required by the due process clause; we merely hold that the policy and custom of the Hamilton County coroner's office is an established state procedure necessitating predeprivation process.
 
 
 26
 Therefore, we reverse the district court's dismissal of Deborah Brotherton's due process claim and remand this case to the district court. Such other issues raised in this appeal will not be addressed now; they may be considered by the district court as it may deem appropriate.
 
 
 27
 JOINER, Senior District Judge, dissenting.
 
 
 28
 I dissent and suggest that the district court should be affirmed.
 
 
 29
 I part company with the majority on the issue of whether the actions of the coroner, in removing the corneas from the eyes of the decedent in accordance with procedures established by Ohio law for the purpose of helping others to see, constitutes a taking of property of the decedent's wife protected by the provisions of 42 U.S.C. Sec. 1983.
 
 
 30
 Ohio law has made it very clear that there is no property right in a dead person's body. Everman v. Davis, 54 Ohio App.3d 119, 561 N.E.2d 547, appeal dismissed, 43 Ohio St.3d 702, 539 N.E.2d 163 (1989) (the possessory right in a body for the purpose of preparation, mourning, and burial does not constitute a property right in the body of another); Carney v. Knollwood Cemetery Ass'n, 33 Ohio App.3d 31, 514 N.E.2d 430, 435 (1986) (rejecting the theory that surviving relatives have a quasi-property right in the body of the deceased, which right, if recognized, would include a right to the custody of the body in the condition it was left without mutilation); Hayhurst v. Hayhurst, 4 Ohio L.Abs. 375 (C.P. Hamilton County 1926) (there can be no property in a dead body); Hadsell v. Hadsell, 3 Ohio C.C. Dec. 725, 726 (Cir.Ct. Dec. 1893) (a dead body is not property, and it does not belong to surviving relatives in the order of inheritance as other property of the estate). Courts in other states which have examined this question have reached a similar conclusion. See State v. Powell, 497 So.2d 1188, 1191 (Fla.1986), cert. denied, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 856 (1987); Georgia Lions Eye Bank, Inc. v. Lavant, 255 Ga. 60, 335 S.E.2d 127, 128 (1985), cert. denied sub nom. Lavant v. St. Joseph's Hosp., 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 721 (1986). These cases are clearly correct, as it is hard to envision a "property" right in another person's remains.
 
 
 31
 Plaintiff attempts to create a property right by pointing to Ohio statutes which plaintiff asserts give a decedent's next of kin certain rights relating to that body for the purpose of organ donation. Ohio Rev.Code Secs. 2108.02(B), 2108.60. This argument is not persuasive for several reasons. The alleged rights do not constitute a property right. Section 2108.02(B) of the statute gives designated persons limited rights to donate body parts of a deceased and it places certain duties on the coroner. Section 2108.60 gives rights to a coroner to remove corneas in described situations and imposes certain duties on him. Neither statute speaks in terms of giving property rights to a surviving relative. As the district court recognized, basically all plaintiffs have under that statute is a right to consent, and that is not enough. See RESTATEMENT (SECOND) OF TORTS Sec. 868 comment a (1979) (the right of control over a dead body does not fit well into the category of property because a body cannot ordinarily be sold or transferred, has no utility, and can be used only for the purpose of interment or cremation).
 
 
 32
 The Uniform Anatomical Gift Act has been enacted in every state in the Union. The Ohio act involved here is designed to encourage the use of corneas from the dead to bring sight to the living by permitting their removal by the coroner during autopsy. These acts are designed to use new scientific knowledge to enable body parts of a deceased to bring sight and health to the living disabled, and thus to society as a whole. These statutes make no effort to reexamine underlying property rights in the body of the decedent. They state a straightforward policy in favor of helping those who live and they provide a procedure for making use of a decedent's body. Specifically, in this case, they provide a procedure for the taking of corneas from a dead body, in which no one has a property right, to help the living.
 
 
 33
 The procedural provisions of the statutes are very explicit and the rights granted by the procedural provisions are very limited: (1) they allow a decedent to give a body part upon his or her death; (2) they allow specific survivors to give body parts upon the decedent's death; (3) they allow the coroner who performs an autopsy and certain other persons to remove corneas if the coroner has no knowledge of an objection; and (4) lastly, as if to emphasize that there was no intention of disturbing the rule of law that there is no property right in dead bodies, the statute states that a person who acts in good faith, without knowledge of an objection, is not criminally or civilly liable for removal.
 
 
 34
 Thus, the court is wrong in its holding that the procedural requisites for dealing with non-property can rise to become property and be protected by the fourteenth amendment. Nor can the grant of procedures to enhance the health and wellbeing of others in society and the imposition of duties on persons (coroners or hospitals) grant property rights protected by the fourteenth amendment in favor of the decedent's relatives.
 
 
 35
 The statute does not give the plaintiff any rights. It gives rights to the coroner (and through that person, the whole of mankind benefits from the use of corneas) to take corneas in the absence of knowledge of an objection. The statute is trying to encourage the use of the corneas and does not place any burden on the coroner to make inquiry. Simply stated, the "bundle of rights" in the plaintiff, in light of the common law history and the express purpose of the two statutes, is virtually nonexistent.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation