**Ronald MELTON, et al., Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, et al., Defendants.**

No. C–1–01–528.

United States District Court, S.D. Ohio, Western Division.

May 7, 2003.

Michael Blaine Ganson, Michael B. Ganson Co. LPA, David Wolf Kapor, Cincinnati, OH, for plaintiffs.

Louis Francis Gilligan, Jamie M. Ramsey, Keating, Muething & Klekamp, Lawrence Edward Barbiere, Michael Edward Maundrell, Schroeder, Mundrell, Barbiere & Powers, Stephen James Patsfall, Stephen Michael Yeager, Patsfall, Yeager & Pflum LLC, John Charles Scott, Joseph T. Mordino, Faulkner & Tepe, Cincinnati, OH, Arthur James Marziale, Jr., Columbus, OH, for defendants.

Thomas Condon, Bloomington, IN, pro se.

Jonathan Tobias, Cincinnati, OH, pro se.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on three motions considered by the Court at a hearing on April 16, 2003. First, the Motion of Defendants Neyer, Dowlin, Portune, Parrott and Pfalzgraf to Dismiss, in Part, Plaintiffs' First Amended Complaint (doc. 7), Plaintiffs' Memorandum in Opposition (doc. 12), and Defendants' Reply (doc. 21). Second, Plaintiffs' Motion to Certify Question of Constitutionality of Immunity Defense to Ohio Supreme Court (doc. 26), Defendants' Response (doc. 28), and Plaintiffs' Reply (doc. 30). Third, the Motion of Defendant Thomas Condon for Judgment on Pleadings to Dismiss, In Part, Plaintiffs' Complaint (doc. 41), Plaintiffs' Response (doc. 54), and Defendant Condon's Reply (doc. 61).

This case is brought by the surviving siblings of Perry Melton, who died November 9, 2000 (doc. 16). Plaintiffs state that after his death, the body of Perry Melton was entrusted to the care and custody of Hamilton County, Ohio, through its county morgue (Id.). Plaintiffs allege that the Hamilton County Defendants granted Defendant Thomas Condon, a photographer, access to the body of their brother and allowed Mr. Condon to take photographs of his body for commercial purposes (Id.). Plaintiffs specifically allege that Defendant Condon "photographed, posed, touched, manipulated, came into possession of photographs, and/or otherwise abused and/or violated the corpse of the decedent, Perry Melton, for purposes of commercial exploitation" (Id.). Plaintiffs bring this action under 42 U.S.C. § 1983 raising federal constitutional due process and equal protection claims against numerous Defendants including but not limited to the following officials or employees of Hamilton County, Ohio: Carl L. Parrot, Jr. M.D., Coroner for Hamilton County, Robert Pfalzgraf, M.D., Deputy Coroner for Hamilton County, and John S. Dowlin, Todd Portune, and Tom Neyer, Jr., members or former members of the Hamilton County Board of Commissioners.

Plaintiffs also alleged a number of pendent state law claims, which the Court dismissed from the case without prejudice in its December 11, 2002 opinion (doc. 56). Having done so, the Court did not explicitly dispose of Defendant Commissioners' Motion to Dismiss, in Part (doc. 7), nor deny Plaintiffs' Motion to Certify as moot (doc. 26). Instead, on February 26, 2003, the Court scheduled oral arguments "on the surviving legal claims" in such motions, as well as Defendant Condon's Motion for Judgment on the Pleadings (doc. 41).

Having reviewed the motions in question, the Court finds that there are no "surviving legal claims" at issue in the Commissioners' Motion to Dismiss, as all

the challenged claims pertained to state law, with the exception of the challenge to Plaintiffs' claim for punitive damages against a municipality, which Plaintiffs conceded is precluded by federal case law (doc. 12). As such, the Court now formally denies Defendant Commissioners' Motion as moot (doc. 7). Similarly, as the state claims were dismissed on December 11, 2002, there is no reason to certify the question of the constitutionality of Ohio Revised Code Chapter 2744 to the Ohio Supreme Court, and therefore the Court now denies Plaintiffs' Motion (doc. 26) as moot.

Defendant Condon's Motion for Judgment on the Pleadings, (doc. 41), included attacks upon both state and federal claims made by Plaintiffs. Therefore, in contrast to the aforementioned motions, Defendant Condon's motion contains two surviving legal claims yet at issue: Plaintiff's Section 1983 claims for deprivation of property and for invasion of privacy/violation of right to publicity. Though the Court has already stated that it would maintain jurisdiction over Plaintiff's Section 1983 claim based upon a violation of substantive due process by actions that "shock the conscience" (doc. 56), the viability of claims based upon theories of deprivation of property or invasion of privacy, as alleged by Plaintiffs, has yet to be decided. The parties presented their arguments as to these claims at the April 16, 2003 hearing.

## I. Deprivation of Property Claim

Defendant Condon argues that while the Sixth Circuit has recognized that a relative has a constitutionally protected property interest in a deceased relative's body, citing *Brotherton v. Cleveland,* there has been no deprivation of that interest in this case (doc. 41). Defendant Condon's argument is premised on the theory that previous jurisprudence dealing with such property interests involved instances where bodies were mutilated or parts of bodies were removed (*Id.*). In this case, Condon posits, only photographs of the dead body were found in his possession. As no body part was stolen or damaged, Defendant Condon argues, there was no deprivation (*Id.*).

Plaintiffs respond that the photographs of their brother's body do constitute property that Defendant Condon clearly intended to use as property to make money for himself (doc. 54). At the hearing, Plaintiffs argued that the taking of the photographs from decedent's file without the family's permission rises to the level of a constitutional violation because the taking happened in a government building, the taking was government-approved, and the taking shocks the conscience.

Defendants argued that photos of dead are used all the time without family permission, to chronicle the scene of death, and in the case of autopsy to chronicle the cause of death. Defendants argue that such photos are used in criminal proceedings and by pathologists who have used autopsy photos for educational seminars and books.

In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings in the light most favorable to the non-moving party. 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 (1990). For purposes of the Court's consideration of the motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false. *Beal v. Missouri Pac. R.R. Corp.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941). In addition to assuming the truthfulness of the factual allegations for purposes of the motion, all reasonable inferences from

these facts are drawn in favor of the non-moving party. *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Alva Coal Corp.*, 365 F.2d 49 (7th Cir.1966).

■ Having reviewed Plaintiffs' deprivation of property claim, the Court finds sufficient allegations in their Complaint to deny Defendant Condon's motion. A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. See B. Cardozo, Paradoxes of Legal Science 129 (1928) (reprint 2000). The Supreme Court has recognized that

> [p]roperty is more than just the physical thing...it is also the sum of all the rights and powers incident to the ownership of the physical thing. It is the tangible and the intangible. Property is composed of constituent elements and of these elements the right to use the physical thing to the exclusion of others is the most essential and beneficial. Without this right all other elements would be of little value.

*Dickman v. Commissioner*, 465 U.S. 330, 349–50, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984) (*quoting Passailaigue v. United States*, 224 F.Supp. 682, 686 (M.D.Ga. 1963)). As such, the Court finds that it is not necessary for Defendant Condon to have stolen a body part from the corpse of Plaintiffs' brother in order to have violated their property right to his body. According to the allegations, which for the purposes of evaluating this motion the Court must assume to be true, Defendant Condon photographed, posed, touched, manipulated, came into possession of photographs, and/or otherwise abused and/or violated the corpse of the decedent, Perry Melton, for purposes of commercial exploitation (doc. 16). These allegations, if true, show that Defendant Condon meddled with property interests of the Plaintiffs.

As such, the Court denies Defendant Condon's Motion for Judgment on the Pleadings as to Plaintiffs' Section 1983 Claim for Deprivation of Property.

## II. Invasion of Privacy/"Right of Publicity" Claim

■ Plaintiffs' Complaint alleges that Defendants' conduct amounts to a "taking" and conversion of their property rights without due process and in violation of the equal protection of the laws. Their first articulated theory was based on property rights they had in the physical remains of their deceased relative. As an alternative property theory, Plaintiffs next argue, citing *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298 (6th Cir.2001) that the right of publicity is a pecuniary right and interest in the commercial exploitation of one's identity reflects property rights (doc. 54). Under this theory, without due process, Defendants took Plaintiffs' right to publicity in the commercial exploitation of the identity of their deceased brother.

Although the Court dismissed Plaintiffs' pendent state law claims, wishing to avoid novel questions of state law, this theory of right of publicity pulls the Court back into the arena of interpreting state law. Though Plaintiffs rely on *Miller* to support their position, it is clear that the Sixth Circuit was interpreting Michigan common law as opposed to that of Ohio. 270 F.3d at 325.

Ohio common law, prior to the enactment in 1999 of Ohio Revised Code § 2741.02, did not recognize a post-mortem right to privacy. *See Reeves v. United Artists Corp.*, 765 F.2d 79, 80 (6th Cir. 1985). Defendant Condon cites to *Reeves* and the line of cases stating that actions for invasion of privacy are not descendible. The Court finds Defendant Condon's reliance on such cases misplaced.

A key distinction can be made between this case, the *Reeves* line of cases, and the application of Ohio Revised Code § 2741.02. Plaintiffs' Complaint does not state that Perry Melton's privacy was invaded, but that their own privacy was invaded, when Defendant Condon allegedly gained access to their brother's body, looked at his photo, and touched and photographed his body. *Reeves* is inapposite. This case does not involve the invasion of the right of privacy of Perry Melton. He was already dead at the time of the alleged events, and any invasion of privacy or unauthorized commercial use of persona claims that he may have theoretically had under Ohio Revised Code § 2741.02 are not at issue under Plaintiffs' Complaint. Ohio statutory law does not address the unauthorized commercial use of the "persona" of the physical remains of a person as opposed to the unauthorized commercial use of the persona of a living person during and after their life. Consequently, the Court will review common law to determine whether such a claim might be viable.

The alleged invasion of privacy in this case, unlike the *Reeves* line of cases, did not involve a depiction of the decedent during his life or representations about the decedent's life. In *Young v. That Was The Week That Was*, 423 F.2d 265, 266 (6th Cir.1970), the Sixth Circuit found that if the alleged invasion of privacy in that case was construed as that of the decedent, there was no right of action because such a cause of action was not descendible under Ohio law at that time. The alleged invasion of privacy in *Young* concerned statements made in a broadcast television program describing the number of descendants of a deceased woman and making a joke at her expense. The Court found, without analysis, that if the complaint was construed as that of the family members "no such right of action exists under the averments of the complaint in the present

case." *Id.* Such language indicates that the Sixth Circuit, in interpreting Ohio law, found that such a right of action did not exist in *Young* but that it could exist in another case. The Court finds that this could be such a case.

This conclusion is further bolstered by the Sixth Circuit's holding in *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir.1991). Though the *Brotherton* court declined to determine whether the Supreme Court of Ohio would categorize the interest of a decedent's spouse in the decedent's body as property, quasi-property, or not property, the Court found that the substance of that interest merited Constitutional protection. The *Brotherton* court specifically held that a spouse had a "legitimate claim of entitlement" in the body of her husband, such that her rights to that body were protected by the due process clause of the Fourteenth Amendment. *Id.* at 482.

■ Under Ohio law, an actionable invasion of privacy claim is (1) the unwarranted appropriation or exploitation of one's personality, (2) the publicizing of one's private affairs with which the public has no legitimate concern, or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *See* 35 O. Jur.3d, *Defamation and Privacy*, § 161 *citing Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956), and *citing* 86 A.L.R.3d 374, 1978 WL 43166 (taking unauthorized photographs as invasion of privacy). Under prong three of *Housh*, with the understanding that Plaintiffs have a "legitimate claim of entitlement" to their brother's body, the Court could find that Defendant Condon's alleged conduct constitutes a wrongful intrusion into the family's privacy in such a manner as to cause mental suffering to a person of ordinary sensibilities.

This would be consonant with the Court's earlier finding based on substantive due process.

However, Plaintiffs' "Right of Publicity" claim falls under the first prong of *Housh*. Plaintiffs theory is grounded in the proposition that the right of publicity is a property right, one of the sticks in the bundle, that Defendants took without due process. The Court finds such theory well-taken. The remains of a person reflect upon the personality of the living person, and as such, to a certain point, reflect a persona that can be appropriated or exploited.

It is not difficult in the light of *Brotherton* to find that families have a right not to be embarrassed or humiliated by the outrageous display or exposure to public view of the remains of a loved one. This is not to say that the official photography of decedent at the scene of death or in an autopsy report would provide the basis for such a claim, as long as such official photos remained in the files of the coroner and they were not released to the public. However, as such documentary photographs ordinarily would not be in the public domain, the use of such photos for personal gain may be actionable, much in the same way as the manipulation of the physical remains of a dead relative is actionable.

To the extent that the identity or persona of the remains of Perry Melton were photographed without permission, or that photographs of his remains were subject to commercial exploitation, there was an unwarranted appropriation or exploitation of such remains. The Court finds that this "stick" was arguably taken by Defendants, and as such, will not dismiss such claim.

## III. CONCLUSION

The Court finds that the only surviving claims at issue in the motions before it are Plaintiffs' Section 1983 claims for deprivation of property and for invasion of privacy/violation of right to publicity. Having reviewed such claims, and having heard the arguments of the Parties on April 16, 2003, the Court finds that such claims should not be dismissed in response to Defendant Condon's Motion for Judgment on the Pleadings. There are sufficient allegations in the Complaint to deny such motion and to support the theory of at least a joint enterprise among Defendants Tobias and Condon. As this motion is only at the preliminary stage of the litigation, the Court is required to take Plaintiffs' allegations as true. Because the Court already dismissed the pendent state law claims without prejudice, the other aspects to the motions are rendered moot.

Accordingly, the Court DENIES the Motion of Defendants Neyer, Dowlin, Portune, Parrott and Pfalzgraf to Dismiss, in Part, Plaintiffs' First Amended Complaint as moot (doc. 7), DENIES Plaintiffs' Motion to Certify Question of Constitutionality of Immunity Defense to Ohio Supreme Court as moot (doc. 26), and DENIES the Motion of Defendant Thomas Condon for Judgment on Pleadings to Dismiss, In Part, Plaintiffs' Complaint (doc. 41).

SO ORDERED.