968 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deborah S. BROTHERTON, individually, on behalf of those
members of the class herein, as administratrix of the Estate
of Steven Brotherton, by and on behalf of her minor
children, and as next friend of Brent Brotherton, Carrie
Brotherton and Melissa Brotherton; John Parnell Stephens,
Executor of the Estate of Polly Stephens; Anita Jane Albus;
Gary Martin Stephens; Ruth Gaynell Heisler; Jimmie Roland
Stephens, Plaintiffs-Appellants,
v.
Frank P. CLEVELAND, M.D., Individually and in his capacity
as Coroner for Hamilton County, Ohio; Cincinnati Eye Bank
for Sight Restoration, Inc.; Bethesda, Inc., d/b/a Bethesda
North Hospital; Eye Bank Association of America,
Defendants-Appellees.
 No. 91-3316.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case requires us to reconsider the facts of Brotherton v. Cleveland, 923 F.2d 477 (6th Cir.1991), in which we recognized a constitutionally-protected interest in a deceased person's corneas. In this case, involving many of the same parties, the plaintiffs contend that the defendants violated 42 U.S.C. § 1983 by removing corneas from deceased members of the plaintiffs' families, against the wishes of the plaintiffs and at least one of the deceased. The district court dismissed this claim on the grounds that all the defendants either merited qualified immunity or were not state actors. For the reasons given below, we affirm in part, reverse in part, and remand the case to the district court.
 
 
 2
 * On February 15, 1988, Steven Brotherton was pronounced dead on arrival at Bethesda North Hospital in Cincinnati, Ohio. The hospital asked his wife, Deborah Brotherton, to consider donating her husband's organs or tissues, but she refused, because such an action would have violated her husband's beliefs. This refusal was part of the hospital's "Report of Death." Because it was believed that Mr. Brotherton may have committed suicide, his body was taken to the Hamilton County Coroner's office. On February 16, 1988, an autopsy was performed on Mr. Brotherton's body. After the autopsy, the Coroner allowed Mr. Brotherton's corneas to be removed and used as anatomical gifts. The Coroner's office had called the Cincinnati Eye Bank, which sent a technician to remove the corneas. Ms. Brotherton learned of this removal only by reading the autopsy report. The hospital had not attempted to inform the coroner's office of Ms. Brotherton's refusal, and the coroner's office did not ask whether such a refusal had been made.
 
 
 3
 On February 9, 1989, Ms. Brotherton, acting individually, on behalf of a class, as Administratrix of the Estate of Mr. Brotherton, and by and on behalf and as next friend of her minor children, Brent Brotherton, Carrie Brotherton and Melissa Brotherton, filed suit in federal district court. She alleged deprivation of due process, a violation of the Equal Protection Clause, and a violation of 42 U.S.C. § 1983. She also challenged the constitutionality of Ohio Rev.Code § 2108.60, which allows a coroner to remove the corneas of an autopsy subject without consent, so long as the coroner does not know of any objection by the decedent, the decedent's spouse, or the person authorized to dispose of the body. Finally, she asserted claims under Ohio law. She named the following as defendants: Frank P. Cleveland, M.D., individually and as Hamilton County Coroner; the Board of County Commissioners of Hamilton County, and each Commissioner individually; the Eye Bank Association of America; Cincinnati Eye Bank for Sight Restoration, Inc.; Ohio Valley Organ Procurement Center; Bethesda North Hospital; and Bethesda, Inc.
 
 
 4
 On August 11, 1989, the district court dismissed this complaint on the grounds that Ms. Brotherton had no federally-protected rights in Mr. Brotherton's remains, and that Ohio Rev.Code § 2108.60 did not violate the United States Constitution. The state claims were dismissed without prejudice. Ms. Brotherton subsequently filed her state claims in state court. Meanwhile, on January 18, 1991, this court reversed the trial court's dismissal of Ms. Brotherton's due process claim and remanded to the district court for further action. Brotherton v. Cleveland, 923 F.2d 477 (6th Cir.1991).
 
 
 5
 On February 14, 1990--before this court had ruled on her appeal--Ms. Brotherton filed this suit, on behalf of the same plaintiffs as the first case, plus five additional plaintiffs who are surviving children of Polly Stephens. According to the complaint, Ms. Stephens was admitted to Bethesda North Hospital on February 4, 1988. As a result of a cardiac catheterization procedure, she died of a blood clot to her brain on February 19, 1988. The hospital never requested an anatomical gift, and Ms. Stephens's relatives were not asked if they would permit such a gift. Nevertheless, the Hamilton County Coroner's Office and the Cincinnati Eye Bank removed Ms. Stephens's corneas. Her children did not learn of this action until October 12, 1988. The plaintiffs (1) claim that they were deprived of their federally-protected rights without due process of law, in violation of 42 U.S.C. § 1983, (2) attack the constitutionality of Ohio Rev.Code § 2108.60, and (3) assert causes of action under state law. The plaintiffs name the following as defendants: Dr. Cleveland, both individually and as Hamilton County Coroner; the Eye Bank Association of America; Cincinnati Eye Bank for Sight Restoration, Inc.; and Bethesda, Inc. d/b/a Bethesda North Hospital.
 
 
 6
 On February 27, 1990, Cincinnati Eye Bank moved to dismiss this complaint under the doctrine of res judicata on the basis of the first case. Dr. Cleveland moved to dismiss on the basis suggested by Cincinnati Eye Bank and also because he was entitled to qualified immunity from liability under § 1983. Bethesda, Inc. filed a motion for summary judgment and the Eye Bank Association of America filed a motion to dismiss, relying upon similar arguments. After a hearing, the district court dismissed this action on July 6, 1990. It concluded that regardless of how this court ruled on Ms. Brotherton's then-pending appeal from her first case, Dr. Cleveland is the only "state actor" involved, and thus the only defendant who could possibly held liable under § 1983. It then ruled that Dr. Cleveland should receive qualified immunity because he did not violate clearly-established law. Therefore, the court dismissed the federal claims with prejudice for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). It also dismissed the state claims without prejudice. On November 14, 1990, it denied the plaintiffs' motions to alter or amend or clarify judgment. This timely appeal followed.
 
 II
 
 7
 * In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982), the Supreme Court stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In this case, the district court ruled that Dr. Cleveland was entitled to qualified immunity because "no court to date, including this Court, has found the plaintiffs' allegations rise to the level of violations of federal or constitutional law," and therefore, it concluded, Dr. Cleveland could not have violated clearly-established law.
 
 
 8
 The plaintiffs contend that even if there were no case law that specifically held that a spouse has a protected legal interest in her husband's body, the courts have long recognized a citizen's right to due process. Furthermore, this right can be violated by a taking of garnished wages, Sniadach v. Family Fin. Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820 (1969); of welfare payments, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011 (1970); or of a driver's license, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586 (1971). Surely, the plaintiffs argue, the body of one's spouse or mother deserves more legal protection than such items. Furthermore, as noted earlier, this court recently recognized the existence of the very right in question. In Brotherton v. Cleveland, 923 F.2d 477, 482 (6th Cir.1991), this court held that "the aggregate of rights granted by the state of Ohio to Deborah Brotherton rises to the level of a 'legitimate claim of entitlement' in Steven Brotherton's body, including his corneas, protected by the due process clause of the fourteenth amendment." The plaintiffs also refer to several provisions of Ohio law that, they argue, should have warned the defendants that their actions were unconstitutional. See, e.g., Ohio Rev.Code § 2927.01(A) ("[n]o person, except as authorized by law, shall treat a human corpse in a way that he knows would outrage reasonable family sensibilities"). The plaintiffs also contend that Dr. Cleveland clearly acted in bad faith.
 
 
 9
 We agree with the district court that Dr. Cleveland is entitled to qualified immunity in his personal capacity. Ohio law originally required the coroner to "have made a reasonable effort to notify the family of the decedent of the request" for an anatomical gift. Ohio Rev.Code § 2108.60(B)(4). However, in 1983, this was amended to allow the removal of corneas if the coroner "has no knowledge of an objection" to the removal by the decedent's family. Until the first Brotherton complaint, no court had construed the amended statute, and thus Dr. Cleveland had no legal guidance in interpreting the plaintiffs' rights. Furthermore, the few cases that had addressed statutes similar to Ohio Rev.Code § 2108.60(B)(4) all held that they established no federally-protected rights. See, e.g., State v. Powell, 497 So.2d 1188, 1191 (Fla.1986), cert. denied, 481 U.S. 1059, 107 S.Ct. 2202 (1987); Georgia Lions Eye Bank, Inc. v. Lavant, 255 Ga. 60, 335 S.E.2d 127, 128, cert. denied, 475 U.S. 1084, 106 S.Ct. 1464 (1986); Tillman v. Detroit Receiving Hosp., 138 Mich.App. 683, 360 N.W.2d 275 (1984). In light of these facts, we believe that Dr. Cleveland had no warning that his actions violated the plaintiffs' constitutional rights.
 
 
 10
 Furthermore, this court's decision recognizing a protected interest in corneas does not prevent Dr. Cleveland from claiming personal immunity. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987) (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738 (1982)). We recognized this rule in Poe v. Haydon, 853 F.2d 418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788 (1989): "Whether qualified immunity is raised in a motion to dismiss or as an affirmative defense, the official must plead facts which, if true, would establish that he was acting within the scope of his discretionary authority when the challenged conduct occurred." (emphasis added).
 
 
 11
 Although the right to due process of law is clearly established, that does not mandate a ruling for the plaintiffs in this case:
 
 
 12
 [O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.
 
 
 13
 Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted). See also Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473 (1990). Moreover, in Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir.1988), this court stated that "to be clearly established, a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." Because no court had recognized the "particularized right" claimed by the plaintiffs, they cannot prove that Dr. Cleveland violated clearly-established law.
 
 
 14
 Finally, we do not believe that Dr. Cleveland's actions constituted an "egregious abuse of governmental power sufficient to state a substantive due process violation." Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 198 (6th Cir.1987); see also Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir.1987) (en banc). This court recognized that his "intentional ignorance [was] induced by Ohio Rev.Code § 2108.60." Brotherton v. Cleveland, 923 F.2d 477, 482 (6th Cir.1991). Furthermore, a government official's intent in such matters is relevant only when the legal rights were clearly established. "[W]e agree with those circuits that have recognized a government official's motive or intent in carrying out challenged conduct must be considered in the qualified immunity analysis, where unlawful motive or intent is a critical element of the substantive claim." Poe v. Haydon, 853 F.2d 418, 431 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788 (1989) (emphasis added). Thus, we conclude that Dr. Cleveland is entitled to qualified immunity in his personal capacity.
 
 B
 
 15
 However, even if Dr. Cleveland is entitled to qualified immunity, such immunity protects Dr. Cleveland only in his individual capacity. He has also been sued in his capacity as Coroner for Hamilton County, and the plaintiffs deny that he can claim immunity in that capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent...." Monell v. Department of Social Serv. of New York City, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978). The Supreme Court recently explained the difference between personal-capacity and official-capacity suits as follows:
 
 
 16
 When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.
 
 
 17
 Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06 (1985) (citations omitted) (footnotes omitted). Moreover, "[a] municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983." Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409 (1980).
 
 
 18
 Having reviewed the record, we agree with the plaintiffs' argument. Therefore, because the district court did not rule on this issue, we will remand this case so that the plaintiffs may proceed with their suit against Dr. Cleveland in his official capacity.
 
 III
 
 19
 Besides determining that Dr. Cleveland was entitled to qualified immunity, the district court held that the other defendants in this suit could not be sued under § 1983 because they were not state actors. The plaintiffs contend, however, that the remaining defendants--Cincinnati Eye Bank, Bethesda, Inc., and the Eye Bank Association of America--are state actors liable to suit under § 1983. They note that
 
 
 20
 [T]o act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.
 
 
 21
 Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186 (1980); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-42, 102 S.Ct. 2744, 2753-56 (1982); Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 335 n. 3 (6th Cir.1990). They further contend that these defendants fall within this rule, because they could not operate their business without the aid of the coroner's illegal actions, thus making them jointly involved in state activity.
 
 
 22
 We agree with the district court that Bethesda, Inc. is not a state actor, as we cannot find that Bethesda participated in "joint action" with its fellow defendants. The plaintiffs simply allege that Bethesda "made no effort to communicate and negligently and intentionally failed to communicate the denial of the anatomical gift to the Hamilton County Coroner's office." However, under Ohio Rev.Code § 2108.021, a hospital is merely required to make a request for anatomical gifts, to document this request in a "certificate of request for an anatomical gift," and to retain this certificate in a central location for at least three years. A hospital may make these certificates public "[u]pon the request of the director of health," but it has no duty to forward information it receives to anyone to whom it releases the body. Furthermore, the removal of the decedents' corneas took place after their bodies had left Bethesda. Thus, Bethesda did not willfully participate in the Coroner's action, nor did it take advantage of the statutory scheme by which the Eye Bank obtained corneas from the Coroner's Office. Merely failing to transmit information does not constitute sufficient "joint action" to make Bethesda a state actor for purposes of § 1983.
 
 
 23
 We reach a different conclusion, however, regarding the eye banks. In their complaint, the plaintiffs allege that the Cincinnati Eye Bank operates an office directly across the street from the Hamilton County Coroner's office. They also allege that, as a matter of "policy, custom and practice," the Coroner's office calls the Cincinnati Eye Bank to inform it that a body is available for cornea removal. Upon receiving such a call, the Cincinnati Eye Bank sends a technician to the Coroner's office to remove the corneas. Furthermore, the plaintiffs allege that the Cincinnati Eye Bank works in conjunction with the Eye Bank Association of America in taking corneas from the Coroner's office. These allegations demonstrate a pattern in which the eye banks worked closely with the Coroner's office in violating the plaintiffs' civil rights; in fact, the Coroner's office depended upon the eye banks for the actual removal of the corneas. We must accept these allegations as true, as this case was dismissed pursuant to Fed.R.Civ.P. 12(b)(6). We review such dismissals de novo; in doing so, we must construe the complaint in the light most favorable to the plaintiff, and must also accept all of the plaintiff's factual allegations as true. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 111 S.Ct. 182 (1990). Thus, the plaintiffs have alleged a situation in which the eye banks must be considered state actors for purposes of § 1983, and we reverse the district court on this point.
 
 
 24
 The Cincinnati Eye Bank argues that even if it were a state actor, it should be dismissed because it acted in good faith. It emphasizes that "a judgment below must be affirmed if correct for any reason, including a reason not considered by the lower court." Whittington v. Milby, 928 F.2d 188, 193 (6th Cir.), cert. denied, 112 S.Ct. 236 (1991). It acknowledges that this court has refused to grant "good faith" immunity to private defendants under § 1983. Duncan v. Peck, 844 F.2d 1261, 1266 (6th Cir.1988). However, the Duncan court did allow a private individual to present a good-faith defense that existed at common law. 844 F.2d at 1267-68. In this case, the Cincinnati Eye Bank contends that a good faith defense is made available by the cornea removal statute at issue. Under Ohio Rev.Code § 2108.60(C), "[a]ny person who acts in good faith under this section and without knowledge of an objection, as described in division (B)(4) of this section, to the removal of corneas is not liable in any civil or criminal action based on the removal." (emphasis added). Thus, the Cincinnati Eye Bank concludes that as long as it acted in good faith and without knowledge of an objection, the statute provides a complete defense.
 
 
 25
 We reject this argument. First, we note that the good-faith defense was apparently not presented below, and that the plaintiffs have therefore not had an opportunity to reply to the Cincinnati Eye Bank's claims. Furthermore, in their complaint, the plaintiffs challenge the constitutionality of Ohio Rev.Code § 2108.60 on the grounds that it allows tortfeasors to claim immunity "merely by intentionally closing their eyes or ignoring documents or the wishes of the decedent or loved ones." Construing this language in the light most favorable to plaintiff, we believe it accuses the eye banks of acting in bad faith by deliberately seeking to avoid knowledge of family objections. The plaintiffs also claim that Dr. Cleveland ordered his clerks to refuse to tell the eye banks whether a decedent's next-of-kin objected to cornea removal. If true, this claim could indicate that the eye banks continued to participate in the cornea removal program even though they knew Dr. Cleveland was denying them legally significant information. In light of these facts, we cannot say that the plaintiffs have conceded that the eye banks acted in good faith. Finally, the very statute on which the good-faith defense rests has been placed in doubt, as the plaintiffs claim that Ohio Rev.Code § 2108.60 is unconstitutional. For all of these reasons, we hold that the eye banks' good-faith defense argument cannot support a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6).
 
 IV
 
 26
 Dr. Cleveland did not violate clearly-established law at the time of the events in question, and thus the district court's decision dismissing the case against him in his personal capacity is AFFIRMED. We also AFFIRM the dismissal of the suit against Bethesda, Inc., as it did not act "under color of state law" for purposes of § 1983. However, we REVERSE the district court's decision to dismiss the suit against Dr. Cleveland in his official capacity. We also find that, based on the allegations of the plaintiffs' complaint, the district court's decision not to treat the eye banks as state officers should also be REVERSED. Accordingly, we REMAND this case to the district court for proceedings not inconsistent with this opinion.