EVERMAN, APPELLANT, *v.* DAVIS, CORONER, APPELLEE, ET AL.

(No. 11125—Decided
January 13, 1989.)

*Paul E. Howell,* for appellant.
*Thomas G. Rauch,* assistant prosecuting attorney, for appellee.

McBRIDE, J. This action by the surviving spouse of Dawn Everman against the Montgomery County Coroner, James H. Davis, M.D., and the County Commissioners of Montgomery County was dismissed on motion in the trial court. On appeal this court is confined to the facts alleged and the sufficiency of the pleading.

Two assignments of error set the stage for the issues presented for review:

"1. The trial court erred in granting appellee's motion to dismiss under Rule 12(B)(6) of the Ohio Rules of Civil Procedure by finding that * * * Sections 313.12 through 313.131 of the Ohio Revised Code impose no standards upon a coroner's decision to perform an autopsy, and thus precluding appellant from proving facts at trial which prove that the coroner abused his discretion in performing the autopsy of the appellant's deceased wife's body.

"2. The trial court erred in determining that a husband's right to possession of his deceased wife's body for purposes of preparation, mourning, and burial is not protected against an unreasonable search or seizure under the Fourth and Fourteenth Amendments to the United States Constitution."

No reference or argument was made in this appeal as to the county commissioners. The action against them has been abandoned and effectively waived.

R.C. 313.131 was enacted March 25, 1987. It has no application to a death which occurred on January 28, 1987.

The appellant, Paul Everman, alleged in his complaint that on January 28, 1987 his wife, Dawn Everman, drove a motor vehicle south on Route 127 in Darke County. At 8:15 a.m. the vehicle traveled over an ice-covered section, crossed the center line and collided with an oncoming truck. Dawn sustained fatal injuries. She died at 1:16 p.m. at Good Samaritan Hospital. The State Highway Patrol investigated the accident and made a report. The appellant advised the hospital that he did not want an autopsy. The hospital notified the county coroner of the death, but not of the request for no autopsy, and the body was transported to the coroner's office. Appellant alleged that although the coroner, acting in his official capacity, routinely performed autopsies where there was a vehicle accident, the coroner was advised of the circumstances of the accident and had access to police information which concluded that the death resulted from injuries sustained in the crash. The coroner's office, nevertheless, performed an autopsy at 9:15 a.m. the following morning. The appellant, as husband, alleged emotional distress and the ensuing physical result of the coroner's conduct in performing the autopsy.

I

As appears from the first assignment of the error, appellant claims that the dismissal of the complaint deprived him from establishing that the coroner abused his discretion in deciding to perform the autopsy. The issue, as stated by appellant, is whether the coroner acted contrary to R.C. Chapter 313, as it then existed, without an independent assessment of the facts to arrive at the true cause of death before determining the necessity for an autopsy.

R.C. 313.12 provides:

"When any person dies as a result of criminal or other violent means, or by casualty, or by suicide, or suddenly when in apparent health, or in any suspicious or unusual manner, the physician called in attendance, or any member of an ambulance service, emergency squad, or law enforcement agency who obtains knowledge thereof arising from his duties, shall immediately notify the office of the coroner of the known facts concerning the time, place, manner, and circumstances of such death, and any other information which is required pursuant to sections 313.01 and 313.22 of the Revised Code. In such cases, if a request is made for cremation, the funeral director called in attendance shall immediately notify the coroner."

R.C. 313.13 provided (see 136 Ohio Laws, Part II, 3586), in part:

"The coroner or deputy coroner may go to the dead body and take charge of it. If, in the opinion of the coroner, or, in his absence, in the opinion of the deputy, an autopsy is necessary, such autopsy shall be performed by the coroner, deputy coroner, or pathologists. A detailed description of the observations written during the progress of such autopsy, or as soon after such autopsy as reasonably possible, and the conclusions drawn therefrom shall be filed in the office of the coroner."

Appellant fails to construe the above sections together and argues that the coroner must first determine the circumstances causing the death in deciding whether an autopsy is necessary. The circumstances are outlined in the statute: as applied in this case, there must be a death by "violent means, or by casualty, or by suicide, * * * or in any suspicious or unusual manner * * *." R.C. 313.12. The language is broad enough to include any vehicular accident. Such accidents involve many possibilities, including traffic manslaughter, drugs, intoxication and other causes. The preservation of evidence of violent death as may be found by autopsy before the body is released to the family is vital to any litigation and to the state of Ohio with its interest in the welfare and lives of its citizens.

The coroner is a public officer acting in quasi-judicial character. His duties are discretionary and in the absence of bad faith or corrupt motive he is protected by limited immunity from ordinary civil liability. *Owens* v. *Anderson* (1987), 39 Ohio App. 3d 196, 530 N.E. 2d 942, and cases cited.

The function of the coroner is further explained in R.C. 313.15:

"All dead bodies in the custody of the coroner shall be held until such time as the coroner, after consultation with the prosecuting attorney, or with the police department of a municipal corporation, if the death occurred in a municipal corporation, or with the sheriff, has decided that it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death, or to decide that such body is no longer necessary to assist any of such officials in his duties."

It is the duty of the coroner to determine the reasonable and true cause of death. He does not resolve other facts or the legal or the criminal responsibility of those involved. It is inconsistent to argue that it is an abuse of discretion if the coroner fails to obtain, consider or agree with statements of others before he decides that an autopsy is necessary where there has been a violent death. His investigation is limited and the necessity is urgent. Preliminary statements or reports of investigations may be considered but are not determinative and do not restrict his discretion. In the present case, accepting allegations that the decedent's injuries were the result of

the crash on the highway with icy conditions, there remains the question of what proximately caused the decedent to disregard the conditions or, if preliminary reports were not complete and accurate, whether another person or condition provided a direct or a contributing proximate cause of sudden death.

The county coroner is a public officer upon whom rests the duty to determine whether an autopsy is necessary. If in his opinion an autopsy is necessary, he is required by law to perform an autopsy, determine the true cause of death and to file a report of his conclusions.

In the instant case there is no allegation of bad faith, corrupt motive, or abuse of discretion as the latter term has been defined. This assignment of error is denied because the decision of the coroner was within his discretion and the scope of his authority as a quasi-judicial officer with limited liability, and no facts were alleged of bad faith or corrupt motive.

## II

There is no issue in this case of the possessory right of a spouse or other appropriate member of the family to the body of the deceased person for the purpose of preparation, mourning and burial. This right is recognized by law and by the decisions. See R.C. 313.14. This is not to say that a corpse may not be temporarily held for investigation as to the true cause of death.

Appellant has chosen to rely upon the "unreasonable search and seizure" language of the Fourth Amendment as a basis for this assignment of error. We find no merit in this argument.

The constitutional provision recites:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The premise of the Fourth Amendment is that the search be *unreasonable,* a condition appellant ignores. The function of the coroner necessitates a temporary delay of burial rights in the public interest. The presumption of constitutionality prevails.

The argument that a dead body is an "effect" within the meaning of "houses, papers and effects" stretches the imagination and the language of the amendment. Words used in a series apply to the same person or similar objects unless the context otherwise requires. Nothing in this language suggests that, despite the respect due to the dead, the body of the former person is the "effect" of anyone else. The word "effects" in legal and common usage includes real or personal property and as used in the Constitution does not necessarily include the right of immediate possession of the dead body of a human being.

The compelling interest of the state in determining the true cause of death of a body found on the highway overrides the interest of relatives to immediate possession for burial.

For the foregoing reasons, the second assignment of error is denied.

The judgment will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and FAIN, J., concur.

ROBERT L. McBRIDE, J., retired, of the Second Appellate District, sitting by assignment.