Diane M. WHALEY, et al., William E. Jones, et al., Christine M. Tunney, et al., Rita Sharrard, Lucille Jones Miller, et al., George Saunders, et al., Plaintiffs–Appellants,

v.

COUNTY OF TUSCOLA Through its Governing Body, Tuscola County Board of Commissioners; Armando Herrera, Executive Director of Mid Regional Tissue Center; Armando Herrera, Individually, and d/b/a Central Michigan Eye Bank; Mid Regional Tissue Center, a Michigan Non-profit Corporation; Saginaw Community Hospital, a County Public Hospital; Herbert L. Nigg, M.D., Individually; Ronald G. Hines, M.D., Pathologist for Tuscola County; Irving M. Raber, M.D., a Pennsylvania Professional Corporation; County of Saginaw; M.B. Goldberger, D.O., Individually and as Saginaw County Chief Medical Examiner; James W. Baker, Personal Representative for the Estate of Armando Herrera, Deceased, Defendants–Appellees,

Lankenaw Hospital, a Pennsylvania Non-profit Corporation; Christopher C. Taylor, Individually, and as a former Tuscola County Commissioner, Defendants.

No. 94–1451.

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1995.

Decided July 12, 1995.

Kenneth K. Wright (argued and briefed), Bay City, MI, John W. Grigg (briefed), Seward, Tally & Piggott, Bay City, MI, for Diane Whaley, William E. Jones, Christine M. Tunney, Rita Sharrard, Lucille Jones Miller, George Saunders, et al.

Kenneth G. Galica (briefed), Johnson, Rosati, Galica & Shifman, St. Clair Shores, MI, Daniel P. Dalton (argued and briefed), Johnson, Rosati, Galica & Shifman, Farmington Hills, MI, for County of Saginaw.

Frank M. Quinn, (argued and briefed), Braun, Kendrick, Finkbeiner, Schafer & Murphy, Bay City, MI, for County of Tuscola.

Michael J. Forster, Saginaw, MI, for Mid Regional Tissue Center.

H. William Martin, (briefed), McGraw, Martin & Heyn, Saginaw, MI, for Saginaw Community Hosp.

Frank M. Quinn, Braun, Kendrick, Finkbeiner, Schafer & Murphy, Bay City, MI, Tobin H. Dust (briefed), Fordney, Dust & Prine, Saginaw, MI, for Herbert L. Nigg, M.D.

Michael J. Huffman (argued and briefed), Smith & Booker, Saginaw, MI, Peter L. Diesel, Smith & Booker, Flint, MI, for Ronald G. Hines, M.D.

Jose T. Brown, (argued and briefed), Cline, Cline & Griffin, Grand Blanc, MI, for Irving M. Raber, M.D.

Daniel P. Dalton, Johnson, Rosait, Galica & Shifman, Farmington Hills, MI, Tobin H. Dust, Fordney, Dust & Prine, Saginaw, MI, for M.B. Goldberger, D.O.

Kenneth G. Galica, (briefed), Johnson, Rosati, Galica, Shifman, LaBarge, Aseltyne, Sugameli & Field, Bay City, MI, for Dr. Varner.

Before: BROWN, BOGGS, and NORRIS, Circuit Judges.

BAILEY BROWN, Circuit Judge.

The plaintiffs brought these § 1983 actions claiming that the defendants violated their Fourteenth Amendment procedural due process rights by removing the corneas or eyeballs of their recently deceased relatives. The interesting question raised in this consolidated appeal is what relief the Constitu-

tion might provide when a state actor steals the eyes of a dead man. Specifically, we must decide whether Michigan law provides the next of kin with a constitutionally protected property interest in a deceased relative's body, including the eyes. The district court thought that it did not and dismissed the plaintiffs' claims. We disagree, REVERSE the court's decision, and REMAND for further proceedings.[1]

## I.

Because these cases present a purely legal question, we need not discuss the facts in great detail. Generally, the plaintiffs are the next of kin of deceased persons whose bodies were the object of autopsies by Dr. Ronald Hines at the Saginaw Community Hospital.[2] Dr. Hines is a pathologist who was employed on a contract basis by the Saginaw and Tuscola County Medical Examiners to perform autopsies. Dr. Hines's diener, or assistant, was the now-deceased Armando Herrera who, coincidently, owned and operated the Central Michigan Eye Bank and Tissue Center and was a certified "enucleator"—having the ability to remove eyes and corneas without causing damage to them. Herrera, as Hines's diener, apparently had a business agreement with Saginaw and Tuscola Counties, in which he would pay all the counties' expenses in performing the autopsies whenever corneas were removed, and half those expenses when they were not.

Pursuant to his duties assisting Dr. Hines, Herrera would sew up the body after Dr. Hines finished the autopsy. Allegedly, he would also remove the corneas and sometimes the eyeballs at this time and sell them out of his Eye Bank. In all of these cases, this was supposedly done without the next of kin's permission: According to the district court's opinion, in some cases the next of kin were never asked, in other cases the next of kin specifically refused to give their consent. The plaintiffs allege that this was authorized by both Tuscola and Saginaw Counties.

Once the removal of the corneas or eyeballs was discovered, the plaintiffs sued in state and federal court claiming both state and federal law violations. After the cases in federal court were consolidated, the plaintiffs agreed to the dismissal of all federal claims except their claim that they were deprived of their Fourteenth Amendment right to procedural due process when the alleged state actors removed the decedents' eyeballs or corneas. After hearing arguments, the court dismissed that claim under Federal Rule of Civil Procedure 12(b)(6), holding that Michigan law did not create an interest in a dead body sufficient to qualify as a "property interest" under the Fourteenth Amendment's Due Process Clause. The plaintiffs appealed.

## II.

The Fourteenth Amendment only prohibits states from depriving a person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. It follows, then, that if state actors, such as the defendants are alleged to be, do not infringe on the life, liberty, or property of the plaintiffs, there can be no due process violation. This case deals with the "property" portion of the clause, i.e., whether the next of kin have a property interest in the body, including the eyes, of a deceased relative.

▮▮▮ The existence of a property interest for due process purposes depends in large

---

**1.** Several defendants ask us to affirm the district court's judgment on an alternative basis. Dr. Raber of Philadelphia, who allegedly bought eyes from Herrera (whose estate is a defendant), asks us to dismiss the case against him because the district court lacked personal jurisdiction. Dr. Raber notes that the district court dismissed Lankenaw Hospital, which he contends was the actual purchaser of the eyes, for that very reason. The plaintiffs argue that Lankenaw Hospital merely mailed Dr. Raber's check, and that Dr. Raber was indeed responsible for purchasing eyes. Dr. Nigg (now deceased) and Tuscola County ask us to grant summary judgment to them because Tuscola County had no practice or procedure authorizing the removal of corneas. The plaintiffs argue that they did have such a policy. The district court did not address these issues in its decision dismissing these cases, which it can do on remand. We therefore do not address these issues on appeal.

**2.** In the case of the *Saunders* plaintiffs, the body was autopsied at Trenerry's Funeral Home.

part on state law. According to the Supreme Court:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Also, " 'property' interests subject to procedural due process are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)(*quoting Roth*, 408 U.S. at 571–72, 577, 92 S.Ct. at 2706, 2709). These rules and understandings may in turn create a "legitimate claim of entitlement," worthy of due process protection. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). Finally, whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law. *Id.* In making this determination, courts must look beyond the law's nomenclature and to its substance.

■ All parties agree that the existence under Michigan law of a constitutionally protected property interest in a dead relative's body turns on our opinion in *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir.1991), where we found that such a property interest exists under Ohio law. The facts of *Brotherton* are similar to the facts here. Steven Brotherton was found dead and taken to the hospital. His wife refused to consent to the use of his body parts for transplant purposes. The coroner's office, pursuant to an established procedure, nevertheless removed Brotherton's corneas during the course of the autopsy. Upon discovery of this fact, his wife brought an action in federal court, alleging that her husband's corneas were removed without due process of law. As in this case, the district court dismissed the claim under Federal Rule of Civil Procedure 12(b)(6).

We reversed, holding that Ohio law created a "legitimate claim of entitlement" and thus a property interest in a dead relative's body. *Id.* at 482.

In making this determination, we first noted that, traditionally, "property" is conceptualized as a bundle of rights which includes "the rights to possess, to use, to exclude, to profit, and to dispose." *Id.* at 481. We then examined Ohio law for indicia of these types of rights in a dead relative's body, and noted: (1) that Ohio's version of the Uniform Anatomical Gift Act, OHIO REV.CODE § 2108.02(B), grants the next of kin the right to control the disposal of the body; (2) that the Ohio Court of Appeals decision in *Everman v. Davis*, 54 Ohio App.3d 119, 561 N.E.2d 547 (1989), acknowledged that the next of kin have the right to possess the body for burial; and (3) that the Ohio Court of Appeals decision in *Carney v. Knollwood Cemetery Ass'n*, 33 Ohio App.3d 31, 514 N.E.2d 430 (1986), allows a claim by the next of kin against those who disturb a buried dead body. *Brotherton*, 923 F.2d at 482. Although both of these Ohio appellate court decisions stressed that a general "quasi-property" right in a dead body did not exist, we found this of only marginal relevance, noting that the existence of a constitutionally protected property interest did "not rest on the label attached to a right granted by the state but rather on the substance of the right." *Id.* Consequently, we held, "the aggregate of rights granted by the state of Ohio to [the next of kin] rises to the level of a 'legitimate claim of entitlement' in the [deceased person's] body, including his corneas, protected by the due process clause of the fourteenth amendment." *Id.*

Because *Brotherton* is the law of this Circuit, our decision in the present case turns on a comparison of Ohio and Michigan law. If Michigan recognizes the same basic rights in a deceased person's body as Ohio, then *Brotherton* controls and we must reverse the district court. After reviewing Ohio and Michigan law, we conclude that they are in substance the same regarding the next of kin's rights in a deceased relative's body. If anything, Michigan is even more explicit than Ohio in its acknowledgment of these rights.

For example, the *Carney* case relied upon in *Brotherton* involved a corpse that had been dug up and discarded by cemetery employees. *Carney*, 514 N.E.2d at 431. The Ohio Court of Appeals, while criticizing the notion that a "quasi-property right" existed in a decedent's body, nevertheless agreed that a cause of action existed for mishandling a corpse. *Id.*, 514 N.E.2d at 435. The court, however, tied this cause of action to the tort of causing serious infliction of emotional distress, noting:

> "The law is not primarily concerned with the extent of physical injury to the bodily remains but with whether there were any improper actions and whether such actions caused emotional or physical suffering to the living kin. The tort rarely involves pecuniary injury; the generally recognized basis of damage is mental suffering."

*Id.* (quoting *Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 292 N.W.2d 816, 820–21 (1980)).

*Everman v. Davis*, 54 Ohio App.3d 119, 561 N.E.2d 547 (1989), the other decision relied upon by the *Brotherton* court, did not directly deal with the status of the dead body as "property." Rather, it held only that a dead body is not an "effect" within the meaning of the Fourth Amendment (granting the people the right to be free from unreasonable searches and seizures in their "persons, houses, papers, and effects."). *Id.*, 561 N.E.2d at 550. The court in that case did note, however:

> There is no issue in this case of the possessory right of a spouse or other appropriate member of the family to the body of a deceased person for the purpose of preparation, mourning and burial. This right is recognized by law and by decisions. See [Оніо Rev.Code.] § 313.14.

*Everman*, 561 N.E.2d at 550. Оніо Rev. Code § 313.14 states that relatives "shall have a prior right as to the disposition of the body" of a deceased person.

Neither *Carney* nor *Everman* made a sweeping pronouncement of the next of kin's right to possess and prevent the mutilation of a decedent's body. *Carney* declared that the cause of action for mishandling a corpse was a derivative of the tort of causing emotional distress, and the statement in *Everman* was dicta, an offhand reference unnecessary to the court's decision. The *Brotherton* court nevertheless thought these decisions, with the Ohio statutes, were sufficient, and rightly so. When these Ohio cases, and the Ohio statute granting the next of kin the prior right to dispose of the body, and the Ohio Anatomical Act are taken together, it demonstrates that in Ohio there are existing "rules and understandings" which grant the next of kin the right to dispose of the body by making a gift of it, to prevent others from damaging the body, and to possess the body for purposes of burial. Such rights in an object are the heart and soul of the common law understanding of "property." It was therefore appropriate for the *Brotherton* court to decide that the next of kin had a legitimate claim of entitlement to the decedent's body.

Turning to Michigan law, its courts have explicitly held what Ohio courts have not: that the next of kin have a right to possess the body for burial and prevent its mutilation. The Supreme Court of Michigan has repeatedly held that the next of kin "[are] entitled to possession of the body as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way." *Doxtator v. Chicago & W. Mich. R.R.*, 120 Mich. 596, 597, 79 N.W. 922 (1899)(acknowledging the right, but holding that, under the circumstances, neither the railroad nor the doctors were liable); *Keyes v. Konkel*, 119 Mich. 550, 551, 78 N.W. 649 (1899)(acknowledging the right, but holding that there was no cause of action specifically in replevin); *Deeg v. City of Detroit*, 345 Mich. 371, 376, 76 N.W.2d 16 (1956)(acknowledging the right, but holding that it did not survive the next of kin's death).[3] Further-

**3.** The Michigan Court of Appeals has also noted that there is no privacy right in a dead relative's body, a question which is not at issue here. *Tillman v. Detroit Receiving Hosp.*, 138 Mich. App. 683, 360 N.W.2d 275, 277 (1984). The issue here is whether the next of kin have an interest in the body of the deceased which rises to the level of a constitutionally protected property interest.

more, Michigan's Anatomical Gift Act is the same as Ohio's. Both give the next of kin the choice of making a gift of all or part of the decedent's body, at least when there is no contrary intent evidenced by the decedent. *Compare* OHIO REVISED CODE § 2108.02(B) *with* MICH.STAT.ANN. § 14.15(10102)(2).

In short, Michigan law is virtually identical to Ohio's with regard to the rights it grants in a decedent's body. The next of kin have the right to dispose of the body in limited circumstances, possess the body for burial, and prevent its mutilation. Applying *Brotherton*, we therefore hold that Michigan provides the next of kin with a constitutionally protected property interest in the dead body of a relative.

■ In its opinion dismissing these cases, the district court disagreed with this conclusion, reasoning that Michigan law could be distinguished from Ohio's. Specifically, it held:

> Michigan law is sufficiently different from Ohio law to render the result different from that in *Brotherton*. Michigan has expressly declined to recognize a property interest in the body of a deceased person but rather, has carefully chosen to provide recovery in tort only when the right of burial of a deceased person without mutilation is violated.

*J.A.* at 4217.

We believe the district court mistakenly focused on the label attached to the right rather than its substance. Although Michigan has repeatedly emphasized that "recovery in such cases is not for the damage to the corpse *as property*, but damage to the next of kin by infringement of his right to have the body delivered to him for burial without mutilation," *Keyes*, 119 Mich. at 551, 78 N.W. 649, *Deeg*, 76 N.W.2d at 19, this is not dispositive. Ohio also took care to emphasize that the cause of action for mutilation of a corpse did not rest on damage to the dead body, but this did not aid the defendants' argument in *Brotherton*. More importantly, the way in

which damages are measured does not necessarily define the substantive interest at stake. Michigan undoubtedly provides the next of kin with the right to possess and prevent the mutilation of a dead relative's body. How Michigan chooses to measure damages when that right is infringed is not determinative.[4] As discussed at oral argument, if a woman's husband dies in a neighbor's yard, the neighbor cannot simply keep the body. In Michigan, he must either turn it over, or be liable. Just because the woman cannot technically "replevin" her husband's body does not mean she has no legitimate claim of entitlement to it. *See Keyes*, 119 Mich. at 551, 78 N.W. 649 (noting that "[i]n numerous cases equity has taken jurisdiction to prevent interference with the control of a dead body by persons entitled to control it").

■ The other factor by which the district court distinguished Michigan law from Ohio's is that OHIO REV.CODE § 313.14 explicitly states that the next of kin have a prior right as to the disposition of the body. No Michigan statute, on the other hand, makes such a clear statement. We do not believe, however, this affects the constitutional analysis. What was relevant in *Brotherton* was that the right to possess the body existed, not that the right was partially grounded in a state statute as opposed to state common law. Michigan common law clearly holds that the next of kin have the right to possess the body for burial. Furthermore, although no Michigan statute clearly states that there is such a right, it is nevertheless contemplated: MICH.STAT.ANN. § 5.953(5) states that "[t]he county medical examiner shall, after any required examination or autopsy, promptly deliver or return the body to relatives or representatives of the deceased;" and MICH.STAT.ANN. § 5.953(8) requires the state to return the body "to the person entitled to the custody or possession of [it]." Both of these statutes imply that the next of kin do indeed have a "right" to the deceased relative's body.

4. We are puzzled by the district court's statement, in support of its conclusion, that "Michigan has specifically addressed this right to possess or control the disposition of a deceased person's body as one which carries redress in tort, and not in property, if violated." *J.A.* at 4213. We say this because tort law covers damage to both persons (e.g., battery) *and* property (e.g., trespass to land).

In reaching today's conclusion, we are mindful of the Supreme Court's admonition in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that not every tort by a state official is a constitutional violation, and that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 700–01, 96 S.Ct. at 1160. It is therefore important to note the limits of this decision. Although both Ohio and Michigan describe the cause of action for damaging a corpse as a personal injury tort, neither this case nor *Brotherton* suggest in any way that personal injury torts *in general* by state actors amount to constitutional violations. In both this case and *Brotherton,* the state cause of action for damaging a corpse explicitly acknowledges the next of kin's right to possess and prevent the mutilation of the dead body. Furthermore, the Anatomical Gift Acts of both states permit the next of kin to make a gift of the body in certain instances. Regardless of the legal label the State places on the rights in a dead body it chooses to create, these rights nevertheless exist. Moreover, they closely correspond with the "bundle of rights" by which property has been traditionally defined. For this reason alone, we conclude that Michigan, like Ohio, provides the next of kin with a legitimate claim of entitlement and thus a property interest in a dead relative's body, including the eyes. Accordingly, the next of kin may bring a constitutional claim under the Due Process Clause.

### III.

We REVERSE the district court's decision, and REMAND for further proceedings.